# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | | |
|---|---|---|
| **S.USA LIFE INSURANCE COMPANY, INC.** | ) ) ) | |
| **Plaintiff,** | ) ) | Civil Action No. 7:18-cv-590 |
| v. | ) ) | |
| **CHARLES JAMES FOSTER,** | ) ) | By: Hon. Robert S. Ballou United States Magistrate Judge |
| **Defendant.** | ) | |

## REPORT AND RECOMMENDATION

Plaintiff S.USA Life Insurance Company ("S.USA Life") filed this breach of contract and quantum meruit action against defendant Charles James Foster ("Foster") to recover commission chargebacks it claims are due under its General Agent Contract ("the Contract"). Compl., Dkt. No. 1. Foster, proceeding *pro se*, filed a responsive pleading denying liability, setting forth defenses to the claims asserted and contending that S.USA Life is liable to him for fraud. I construe Foster's pleadings as an Answer and Counterclaim. Resp. Pl., Dkt. No. 5. S.USA Life moves to dismiss Foster's counterclaim under Rule 12(b)(6). Pl. Mot. to Dismiss, Dkt. No. 6.

I find that oral argument will not aid the court with the pending motion, which has been fully briefed and is ripe for decision. I consider this motion pursuant to 28 U.S.C. § 636(b)(1)(B) and conclude that Foster's counterclaim fails to plead sufficient facts to support a claim. I **RECOMMEND GRANTING** Plaintiff's motion to dismiss (Dkt. No. 6) and allowing Foster leave to file an amended counterclaim within twenty-one (21) days of the date the court acts upon this Report and Recommendation.

I.     Background

The facts are taken from the complaint, answer and counterclaim and the documents attached.[1] See E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 448 (4th Cir. 2011) ("a court evaluates the complaint in its entirety, as well as documents attached or incorporated into the complaint"); Phillips v. LCI Int'l Inc., 190 F.3d 609, 618 (4th Cir.1999) ("a court may consider [a document outside the complaint] in determining whether to dismiss the complaint" where the document "was integral to and explicitly relied on in the complaint" and there was no authenticity challenge).

A.  Complaint

Foster, who is an independent insurance agent in Florida, entered into the Contract with S.USA Life on July 1, 2017, to solicit applications for and to sell S.USA Life's insurance products. Under the Contract, S.U.S.A. Life agreed to pay Foster a commission on the insurance policies that he sold.  S.USA Life paid Foster the earned commission upon receipt of the application and the issuance of a policy. Compl., Dkt. No. 1, ¶¶ 8–9. Foster agreed to repay S.USA Life the commission if the policy was later rescinded or terminated within the first year. Id. at ¶ 10.  The commission chargeback portion of the Contract required Foster to repay any chargebacks within 30 days, including any interest on the amount due and attorney's fees incurred in collecting any amount due. Id. at ¶ 11.  On November 1, 2017, S.USA Life gave Foster written notice that it was terminating the Contract, and on February 16, 2018, S.USA Life demanded that Foster repay the commission chargebacks assessed. Id. at ¶ 12–13.  Foster has not

---

[1] In evaluating this motion, I will not consider the new factual allegations and exhibits attached to Foster's responses to the motion to dismiss. It is "axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss." Katz v. Odin, Feldman & Pittleman, P.C., 332 F.Supp.2d 909, 917 n. 9 (E.D. Va. 2004) (quoting Morgan Distrib. Co., Inc. v. Unidynamic Corp., 868 F.2d 992, 995 (8th Cir.1989) (citation omitted). I note that Foster's responses do not materially impact the analysis of his legal claims.

paid the amount S.USA Life claims is due, and S.USA Life now brings this action for breach of contract and quantum meruit, seeking $117,320.71, plus attorney's fees and pre-and post-judgment interest. Id., Prayer for Relief.

### B. Counterclaim

Foster asserts in his answer and counterclaim that identity thieves used his insurance license to process applications for clients with S.USA Life without his knowledge. Resp. Pl., Dkt. No. 5, p. 3. Foster asserts that S.USA Life:

> has recordings in which multiple individuals (different voices and accents) called their company to process applications, stating they each were Charles James Foster and in some cases received multiple calls simultaneously stated [sic] they were each Charles James Foster. They told various individuals Charles [J]ames [F]oster is on the other phone now and other [C]harles [J]ames [F]oster's would have to call back when that [C]harles [J]ames [F]oster was done.

Id. at p. 2. Foster asserts that he informed S.USA Life employee Jack Heller,

> of the actions and he flew down to [F]ort [L]auderdale the next day and upon examining the actions cancelled all licenses with his company, He did this after I [Foster] demanded action of him of this deception. At that point the perpetrators of the identity theft called the clients and had them cancel S.USA's policy and switched them to another carrier (since further payments with S.USA life were ended on those contracts).

Id. Foster asserts that Mr. Heller "knew the crime had been committed and still allowed S.USA Life to file false documentation with the IRS and credit bureaus causing specific financial loss on the part of the defendant." Id. He further asserts that Mr. Heller assisted "the perpetrators in concealing S.USA Life's knowledge of the events. Since S.USA Life [k]nows these are illegal actions profited by a third party their action against me is being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation." Id. Foster asserts that "S.USA Life and been [sic] informed repeatedly about the Fraud from

3

customer service to top echelon individuals…and they continue to falsely report the incident to credit reporting agencies and the IRS." Id. at p. 4.

Foster asserts that S.USA Life "conceal[ed]" the facts and "continued to operate with the identity thieves." Id. at p. 3. Foster states that "these same individuals are still processing applications for some of these same clients with S.USA Life under different insurance agent licenses and are still being sold by individuals unlicensed in pertinent states." Id.   Foster also asserts that S.USA Life was required by state law to notify the department of insurance in each state of any violation of insurance law within 30 days and has not filed documentation with any state on each violation involved in this case. Id.

**II.     Standard of Review**

The purpose of a Rule 12(b)(6) motion to dismiss is to test the sufficiency of Foster's counterclaim, not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." See Edwards v. City of Goldsboro, 178 F.3d 231, 243–44 (4th Cir. 1999). In considering a Rule 12(b)(6) motion, a court must accept all factual allegations in the counterclaim as true and must draw all reasonable inferences in favor of Foster. Erickson v. Pardus, 551 U.S. 89, 94 (2007). Legal conclusions in the guise of factual allegations are not entitled to a presumption of truth. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). To survive a motion to dismiss, Foster must "state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678 (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. The plausibility standard requires more than "a sheer possibility that a defendant has acted unlawfully." Id.

Because Foster is proceeding *pro se,* his pleadings must be "liberally construed" and "however inartfully pleaded . . . held to less stringent standards than formal pleadings drafted by lawyers." Erickson, 551 U.S. at 93 (internal citation omitted). However, the court may not ignore a clear failure to allege facts sufficient to state a cognizable claim in a federal district court. See Weller v. Dep't of Soc. Servs., 901 F.2d 387, 391 (4th Cir.1990) ("The 'special judicial solicitude' with which a district court should view such *pro se* complaints does not transform the court into an advocate. Only those questions which are squarely presented to a court may properly be addressed.").

**III.   Analysis**

Foster's answer and counterclaim is somewhat unclear, asserting defenses to S.USA Life's complaint along with general allegations and legal conclusions of fraud committed by S.USA Life. Liberally construing the allegations set forth in Foster's counterclaim, he asserts claims against S.USA Life for fraud, fraudulent concealment, and aiding and abetting fraud.

S.USA Life asserts that Foster's allegations fail to state a claim under both Virginia and Florida law. The contract at issue in S.USA Life's complaint includes a choice of law provision which provides that it will be governed by Virginia law. Dkt. No. 1-1, p. 4.  Foster cites Florida law in support of his counterclaim. When federal jurisdiction depends on diversity of citizenship, the applicable law must be determined by the choice of law rules of the forum state. Brendle v. Gen. Tire & Rubber Co., 408 F.2d 116, 116 (4th Cir. 1969).  Virginia courts classify fraud as tort claims (Richmond Metro Auth. v. McDevitt Street Bovis, Inc., 256 Va. 553, 507 S.E.2d 344, 346–47 (Va. 1998)), thus, Foster's claims fall under Virginia's "place of the wrong" (*lex loci delicti*) rule.  See Quillen v. Int'l Playtex, Inc., 789 F.2d 1041, 1044 (4th Cir. 1986). The place of the wrong denotes the place where "the last event necessary to make an act[or] liable for an

5

alleged tort takes place." Id. (internal citations omitted). "In the fraud context, 'the place of the wrong is where the loss is sustained ....'" Self Insured Servs. Co. v. Panel Sys., Inc., 352 F. Supp. 3d 540, 552–53 (E.D. Va. 2018) (quoting Jordan v. Shaw Indus., Inc., 131 F.3d 134, at *3 (4th Cir. Nov. 26, 1997)). Foster alleges that S.USA Life's fraudulent acts and/or concealment caused him "financial loss" and "damages." Dkt. No. 5. Given that Foster is a resident of Florida, I will presume for purposes of this Report and Recommendation that Florida law applies to Foster's counterclaim. However, I note that Florida law and Virginia law are almost identical on the issues discussed herein.

### A. Fraud

Foster's counterclaim, construed liberally, fails to plead a claim of fraud against S.USA Life. Rule 9(b) of the Federal Rules of Civil Procedure requires a party to plead fraud with specificity. Indeed, "[i]n alleging fraud ... a party must state with particularity the circumstances constituting fraud...." Fed. R. Civ. P. 9(b). As the Fourth Circuit has elaborated, "the 'circumstances' required to be pled with particularity under Rule 9(b) are 'the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.'" Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 784 (4th Cir. 1999) (citing 5 Charles Alan Wright and Arthur R. Miller, Fed. Practice and Procedure: Civil § 290, at 590 (2d ed.1990)).

To set forth a prima facie case of fraud under Florida law,[2] Foster must allege that S.USA Life (1) made a false statement about a material fact; (2) knew or should have known [the

---

[2] To state a claim of fraud under Virginia law, Foster must allege that S.USA Life made "(1) a false representation (2) of a material fact (3) made intentionally and knowingly (4) with intent to mislead (5) upon which [Foster] relied (6) that damaged [Foster]." Jackson v. BECCM Co., Inc., No. 3:09-cv-54, 2010 WL 56077, at *6 (W.D. Va. Jan. 5, 2010).

6

statement] was false; (3) made the statement with intent to induce reliance on it; and (4) because of his justifiable reliance on the statement, Foster was injured. Asokan v. Am. Gen. Life Ins. Co., 302 F. Supp. 3d 1303, 1315 (M.D. Fla. 2017).

Here, Foster claims that unidentified third parties committed fraud by using Foster's insurance license to sell S.USA Life policies to new customers without his knowledge. When Foster became aware of this fraud, he notified S.USA Life, through employee Jack Heller, who traveled to Florida to investigate Foster's claim, and canceled Foster's licenses with S.USA Life. Heller did not thereafter report these fraudulent acts to the insurance regulators in any state. Instead, S.USA Life filed false documentation with the IRS and credit bureaus which caused financial loss to Foster. S.USA Life continues to process applications for the identity thieves under different insurance agent licenses.  Dkt. No. 5.

Foster's allegations center around fraud committed by third parties whom he cannot identify, and that S.USA Life had knowledge of and failed to report this fraudulent activity. The majority of Foster's claims involve S.USA Life's concealment of the fraud and/or its failure to report the fraud. The counterclaim is devoid of the specificity required under Rule 9(b) when pleading fraud and lacks the affirmative false representations of material fact by S.USA Life. Foster contends that S.USA Life filed false documentation with the IRS and credit bureaus which caused financial loss to Foster. See Dkt. No. 5, p. 3.  However, Foster does not state what false documents S.USA Life filed, what statements within those documents were misrepresentations, when the documents were filed, by whom they were filed, or with which credit bureaus they were filed. Foster's general allegation that S.USA Life filed "false documentation" and it caused him "financial loss" is insufficient to state a claim of fraud. Dkt. No. 5, p. 3.  Harrison, 176 F.3d at 784.

7

### B. Fraudulent Concealment

Likewise, Foster fails to plead the required elements for fraud by concealment under Florida law: (1) S. USA Life concealed or failed to disclose a material fact; (2) S.USA Life knew or should have known the fact should be disclosed; (3) S.USA Life knew its concealment or failure to disclose would induce Foster to act; (4) S.USA Life had a duty to disclose the fact; and (5) Foster detrimentally relied on the misinformation.[3] Asokan, 302 F.Supp.3d at 1315.

"In contrast to affirmative misrepresentations, fraudulent concealment, or fraud by omission…, 'is by its very nature, difficult to plead with particularity.'" Breeden v. Richmond Cmty. Coll., 171 F.R.D. 189, 195–96 (M.D.N.C. 1997) (quoting Daher v. G.D. Searle & Co., 695 F. Supp. 436, 440 (D. Minn. 1988). There is a split in authority as to whether a litigant must comply with the heightened pleading requirements of Rule 9(b) in cases of fraudulent concealment or omission. Compare Doll v. Ford Motor Co., 814 F. Supp. 2d 526, 538 (D. Md. 2011) ("[I]n fraudulent concealment cases where the concealment involves omissions of material fact, Rule 9(b)'s particularity requirements are relaxed.") and In Re MI Windows and Doors, Inc. Prods. Liab. Litig., 914 F. Supp. 2d 744, 753 (D.S.C. 2012) ("Under Rule 9(b), a fraud claim must be pled with particularity, but that rule is often applied more liberally to fraud by silence claims because it may be difficult to identify when, where, and by whom a representation should have been made.) (internal quotations omitted) with Koski v. Carrier Corp., 347 F.Supp.3d 1185, 1196 (S.D. Fl. 2017) ("The Plaintiff's claim for fraudulent concealment is subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b)."), and Dugas v. 3M Co., 101 F. Supp. 3d 1246, 1254 (M.D. Fl. 2015) ("Because a claim for fraudulent concealment sounds in fraud it must meet Rule 9(b)'s heightened pleadings standard").

---

[3] Under Virginia law Foster must prove concealment of a material fact by one who knows that the other party is acting upon the assumption that the fact does not exist. Allen Realty Corp. v. Holbert, 227 Va. 441, 450 (Va. 1984).

Courts applying a less stringent pleading standard to fraudulent concealment claims note that omissions cannot be described in terms of the time, place, and contents of the misrepresentation as required by other types of fraudulent concealment. Doll, 814 F.Supp.2d at 538. Nevertheless, a plaintiff claiming fraud by concealment or omission must still plead facts with sufficient particularity to "fairly appraise the defendant of the charges." Breeden, 171 F.R.D. at 195.

> In order to comply with the pleading requirements of Rule 9(b) with respect to fraud by omission, a plaintiff usually will be required to allege the following with reasonable particularity: (1) the relationship or situation giving rise to the duty to speak, (2) the event or events triggering the duty to speak, and/or the general time period over which the relationship arose and the fraudulent conduct occurred, (3) the general content of the information that was withheld and the reason for its materiality, (4) the identity of those under a duty who failed to make such disclosures, (5) what those defendant(s) gained by withholding information, (6) why plaintiff's reliance on the omission was both reasonable and detrimental, and (7) the damages proximately flowing from such reliance.

Id. (citing cases).

Here, Foster's allegations do not sufficiently state a claim of fraudulent concealment against S.USA Life under either Rule 9(b) or a more relaxed pleading standard. Foster makes general allegations that S.USA Life concealed the fraud committed by third parties against S.USA Life and Foster by failing to notify the state authorities of these fraudulent actions. Dkt. No. 5, p. 4. Foster also argues that USA Life owed a general duty to report the fraud. Such allegations are not sufficient to establish that S.USA Life had a duty to speak and report the alleged wrongful conduct of others, which is the fourth element required to prove fraudulent concealment.

Foster also failed to allege the third and fifth elements of fraudulent concealment: that S.USA Life concealed a material fact from him, knowing that he was acting upon the assumption that the fact did not exist; or that he detrimentally relied upon S.USA Life's misinformation.

Indeed, Foster could not detrimentally rely upon S.USA Life's misinformation, because he reported the fraudulent activity to S.USA Life. "In all cases of fraud the plaintiff must prove that it acted to its detriment in actual and justifiable reliance on the defendant's misrepresentation (or on the assumption that the concealed fact does not exist)." Bank of Montreal v. Signet Bank, 193 F.3d 818, 827 (4th Cir. 1999). Foster does not allege that S.USA Life committed fraud upon him or concealed fraud from him. Rather, he asserts that unidentified third parties stole his identity and committed fraud by causing S.USA Life wrongfully to issue new insurance policies, and thus, to pay a commission on the new policies; that he reported that fraud to S.USA Life; and that S.USA Life failed to report that fraud to other authorities or to their customers. Accordingly, Foster's cross-claim does not sufficiently state a claim against S.USA Life for fraudulent concealment.

### C. Aiding and Abetting Fraud

Foster also asserts that S.USA Life's actions constituted aiding and abetting the fraud committed by the third parties who stole his identity and caused S.USA Life to pay commissions wrongfully. Foster claims that S.USA Life's failure to report the fraud to various state departments of insurance and/or the IRS allowed the fraud to continue, thereby aiding and abetting the fraudulent actions of the third parties, causing Foster harm.

Foster relies upon Chang v. JPMorgan Chase Bank, N.A., 845 F.3d 1087 (11th Cir. 2017) to support his aiding and abetting claim. In Chang, the Eleventh Circuit noted that although Florida courts have not recognized a specific cause of action for aiding and abetting fraud, the courts acknowledge its existence and have articulated the following elements: 1) the existence of an underlying fraud; 2) that the defendant had knowledge of the fraud; and 3) that the defendant

10

provided substantial assistance to advance the commission of the fraud. Id. at 1097–98.[4] See also, Trinity Graphic, USA, Inc. v. Tervis Tumbler Co., 320 F. Supp. 3d 1285, 1296 (M.D. Fla. Jul. 30, 2018) (recognizing a claim for aiding and abetting fraud).

Here, Foster fails to sufficiently plead the third element of aiding and abetting fraud– that S.USA Life provided substantial assistance to advance the fraud. "Substantial assistance occurs when a defendant affirmatively assists, helps conceal or fails to act when required to do so, thereby enabling the breach to occur." Lerner v. Fleet Bank, N.A., 459 F.3d 273, 295 (2d Cir. 2006) (internal quotation marks omitted). Here, the substantial assistance alleged by Foster is S.USA Life's inaction by failing to report the third parties' fraud. Mere inaction "constitutes substantial assistance only if the defendant owes a fiduciary duty directly to the plaintiff." Chang, 845 F.3d at 1098. See Freeman v. JPMorgan Chase Bank N.A., 675 Fed. Appx. 926, 934 (11th Cir. 2017) ("Because banks do have a duty to safeguard trust funds deposited with them when confronted with clear evidence indicating that those funds are being mishandled, a bank's inaction—that is, its failure to stop the theft of such trust funds—can constitute substantial assistance.") (internal citations omitted).

Thus, for S.USA Life's inaction to constitute substantial assistance it must owe a fiduciary duty directly to Foster. There is no allegation that S.USA Life owes a fiduciary duty to Foster, nor does the law support such a claim. Rather, the relationship between S.USA Life and Foster is purely contractual. Under both Virginia and Florida law, a fiduciary duty does not arise where the claim is dependent upon the existence of a contractual relationship between the parties. Detwiler v. Bank of Central Fla., 736 So. 2d 757, 759 (Fla. App. 5 Dist. 1999); Dunn Const. Co. v. Cloney, 278 Va. 260, 267–68 (Va. 2009). S.USA Life and Foster's relationship is

---

[4] Virginia law has "explicitly refused to recognize the tort of aiding and abetting fraud." Smith v. CNA Fin. Corp., No. 7:01cv653, 2003 WL 24253672, at *7 (W.D. Va. Nov. 28, 2003).

11

based entirely upon the respective duties and obligations under the Contract, and there is no allegation that S.USA Life owed Foster any obligation independent of the Contract. Accordingly, the alleged inaction of S.USA Life to report fraud by third parties does not constitute substantial assistance to advance the commission of the fraud.

Foster's reliance on the facts of Chang v. JPMorgan Chase Bank, N.A. is misplaced. Chang involved a fraudulent scheme where a bank customer who owned a title company stole money from his client's (Chang's) escrow funds. 845 F.3d at 1087. The court found that the bank president knowingly assisted the bank customer in stealing the money held in escrow in an account with the bank. The court found that the bank had actual knowledge of the fraud because, among other things, one of its bank officers had been bribed to open the escrow account without using the proper procedures. Id. at 1091. The court determined that the bank owed Chang a duty of care even though he was not a bank customer because the bank was aware that Chang had a fiduciary relationship with the bank's customer, and the bank knew that the customer was misappropriating Chang's money. Id. at 1095. The court also found that Chang sufficiently stated claims against the bank for aiding and abetting fraud, because he claimed that the bank rendered substantial assistance to the bank's customer in the commission of fraud. Under those "particular circumstances," the bank's conduct was sufficient to constitute substantial assistance. Id. at 1091. The court noted that the bank's knowledge of the underlying fraud was a "crucial element." Id. at 1098.

No such particular circumstances exist here. Foster does not allege that S.USA Life was aware of the third parties' fraud until Foster reported it to the company, and shortly thereafter, an S.USA Life employee flew to Florida and canceled the affected policies. Foster does not allege that S.USA Life committed any affirmative acts to aid and abet the fraud, other than mere

inaction. Thus, because Foster's counterclaim does not establish that S.USA Life owes him a fiduciary duty outside of the Contract, his claim for aiding and abetting fraud fails. See Meridian Trust Co. v. Batista, 2018 WL 4693533, at *5–6 (S.D. Fl. Sept. 26, 2018) (Distinguishing Chang and finding no claim of aiding and abetting fraud).

Foster failed to allege sufficient facts to establish a cause of action for fraud, fraudulent concealment, or aiding and abetting fraud. It is not clear that Foster can assert sufficient facts to support any of his claims. Nevertheless, the admonition of the Fourth Circuit is that a defendant should be given an opportunity to amend the counterclaim if the deficiencies identified in this Report and Recommendation can be remedied by amendment. See Goode v. Cent. Virginia Legal Aid Soc'y, 807 F.3d 619, 623–624 (4th Cir. 2015). Accordingly, I further **RECOMMEND** that Foster be given 21 days from the date the District Court acts upon this Report and Recommendation to file an amended counterclaim.

## RECOMMENDED DISPOSITION

For the foregoing reasons, I **RECOMMEND** that S.USA Life's Motion to Dismiss (Dkt. No. 6) be **GRANTED**, and that Foster be allowed leave to file an amended counterclaim within twenty-one (21) days of the date this court acts upon this Report and Recommendation.

The clerk is directed to transmit the record in this case to the Honorable Michael F. Urbanski, United States District Judge, and to provide copies of this Report and Recommendation to counsel of record and *pro se* parties. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation which must be filed within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by me that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28

U.S.C. § 636(b)(1)(C) as to factual recitations or findings, as well as to the conclusion reached by me, may be construed by any reviewing court as a waiver of such objections, including a waiver of the right to appeal.

Entered: April 29, 2019

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge