# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | | |
|---|---|---|
| **S.USA LIFE INSURANCE COMPANY, INC.** | ) ) ) | |
| **Plaintiff,** | ) ) | **Civil Action No. 7:18-cv-590** |
| **v.** | ) ) | |
| **CHARLES JAMES FOSTER,** | ) ) | **By: Hon. Robert S. Ballou**  **United States Magistrate Judge** |
| **Defendant.** | ) | |

## REPORT AND RECOMMENDATION

This breach of contract and quantum meruit action is before the court on plaintiff S.USA Life Insurance Company's ("S.USA Life") motion to dismiss *pro se* defendant Charles James Foster's ("Foster") Amended Counterclaim (Dkt. No. 27), and Foster's motion to dismiss S.USA Life's Complaint for failure to state a claim upon which relief can be granted (Dkt. No. 31).

I find that oral argument will not aid the court with the pending motions, which have been briefed and are ripe for decision. I consider these motions pursuant to 28 U.S.C. § 636(b)(1)(B) and conclude that Foster's amended counterclaims fail to plead sufficient facts to support a claim. I **RECOMMEND GRANTING** S.USA Life's motion to dismiss Foster's amended counterclaim (Dkt. No. 27) with prejudice. I further find that S.USA Life's Complaint properly states claims of breach of contract and unjust enrichment and **RECOMMEND DENYING** Foster's motion to dismiss the Complaint. Dkt. No. 31.

### I.  PROCEDURAL HISTORY

This court previously dismissed Foster's first counterclaim for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and allowed Foster 21 days to file an amended counterclaim. Dkt. No. 18.  On May 20, 2019, Foster filed an amended

counterclaim that failed to comply with the pleading requirements of Federal Rule of Civil Procedure 8. The court granted Foster an additional 21 days to file an amended counterclaim, setting forth the pleading standards of Rule 8 and strongly encouraging Foster to review the court's Pro Se Handbook. Dkt. No. 21.

Foster filed another amended counterclaim on June 24, 2019. Dkt. No. 26.  S.USA Life filed a motion to dismiss the amended counterclaim pursuant to Rule 12(b)(6). Dkt. No. 27.   On August 2, 2019, Foster filed a motion to dismiss the complaint for failure to state a claim, along with another amended counterclaim. Dkt. Nos. 31 & 32.

## II.     BACKGROUND

The facts are taken from the complaint, answer and counterclaims and the documents attached. See E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 448 (4th Cir. 2011) ("a court evaluates the complaint in its entirety, as well as documents attached or incorporated into the complaint"); Phillips v. LCI Int'l Inc., 190 F.3d 609, 618 (4th Cir. 1999) ("a court may consider [a document outside the complaint] in determining whether to dismiss the complaint" where the document "was integral to and explicitly relied on in the complaint" and there was no authenticity challenge).

The facts underlying S.USA Life's complaint and Foster's initial counterclaim are fully set forth in this court's previous Report and Recommendation.[1] Dkt. No. 17, pp. 2–4. Briefly, Foster was an independent insurance agent in Florida and entered into a General Agent Contract ("the Contract") with S.USA Life to solicit applications for and sell S.USA Life's insurance products. S.USA Life alleges that Foster is obligated to repay commissions he received pursuant to the Contract for policies he sold that were rescinded or terminated within the first year. S.USA

---

[1] Foster's amended counterclaims appear to adopt the facts and allegations set forth in his initial counterclaim, together with additional facts and allegations included in the amended counterclaims.  See Dkt. Nos. 26, 32.

2

Life brought this action for breach of contract and quantum meruit, seeking $117,320.71, plus attorney's fees and pre-and post-judgment interest.

Foster's counterclaims allege that the policies at issue were sold by identity thieves who used his insurance license to process applications for clients with S.USA Life without his knowledge. Foster asserts that he informed S.USA Life of the fraudulent actions of the identity thieves and S.USA Life failed to report the identity theft to its clients or the Department of Insurance. Foster alleges that he specifically informed S.USA Life employee Jack Heller of the identity theft and Jack Heller assured Foster that he would end the illegal actions and take appropriate measures, but failed to do so. Foster further asserts that S.USA Life reported to the IRS that Foster earned income for commissions that were paid to the identity thieves, rather than Foster. Foster alleges that S.USA Life is a "co-conspirator" with the identity thieves and helped to conceal their fraudulent actions.

### III.    STANDARD OF REVIEW

The purpose of a Rule 12(b)(6) motion to dismiss is to test the sufficiency of a complaint or counterclaim, not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." See Edwards v. City of Goldsboro, 178 F.3d 231, 243–44 (4th Cir. 1999). In considering a Rule 12(b)(6) motion, a court must accept all factual allegations as true and must draw all reasonable inferences in favor of the plaintiff. Sec'y of State for Defence v. Trimble Navigation, Ltd., 484 F.3d 700, 705 (4th Cir. 2007). Legal conclusions in the guise of factual allegations are not entitled to a presumption of truth. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). To survive a motion to dismiss, the complaint must "state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678 (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere

conclusory statements, do not suffice." Id. The plausibility standard requires more than "a sheer possibility that a defendant has acted unlawfully." Id.

Because Foster is proceeding *pro se,* his pleadings must be "liberally construed" and "however inartfully pleaded . . . held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 93 (2007) (internal citation omitted). However, the court may not ignore a clear failure to allege facts sufficient to state a cognizable claim in a federal district court. See Weller v. Dep't of Soc. Servs., 901 F.2d 387, 391 (4th Cir. 1990) ("The 'special judicial solicitude' with which a district court should view such *pro se* complaints does not transform the court into an advocate. Only those questions which are squarely presented to a court may properly be addressed.").

## IV.     ANALYSIS

### a.   Amended Pleading Without Leave of Court

Federal Rule of Civil Procedure 15(a) provides that "[a] party may amend its pleading once as a matter of course within 21 days after serving it…. In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave."  Rule 15 allows courts to freely grant leave to amend a complaint "when justice so requires."  Id.  "If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." Foman v. Davis, 371 U.S. 178, 182 (1962).  The grant or denial of leave lies in the sound discretion of the district court. See Gambelli v. United States, 904 F. Supp. 494, 497 (E.D. Va. 1995) aff'd, 87 F.3d 1308 (4th Cir. 1996).  Denial of leave to amend constitutes an abuse of discretion unless the court gives sufficient reason, such as futility of amendment, undue delay, bad faith, dilatory motive, undue prejudice, or repeated failure to cure deficiencies by previous amendments.  Foman, 371 U.S. at 182.  "Unless a proposed amendment may clearly be seen to be futile because of substantive or

procedural considerations, conjecture about the merits of the litigation should not enter into the decision whether to allow amendment." Davis v. Piper Aircraft Corp., 615 F.2d 606, 613 (4th Cir. 1980) (internal citations and quotations omitted).  Generally, a court will liberally allow a pro se plaintiff leave to amend to correct factual insufficiencies in the complaint.

Here, the court granted Foster leave to file an amended counterclaim within 21 days of May 14, 2019. Dkt. No. 18.  On May 20, 2019, Foster filed an amended counterclaim that failed to comply with the pleading requirements of Federal Rule of Civil Procedure 8. The court granted Foster an additional 21 days to file an amended counterclaim, setting forth the pleading standards of Rule 8 and strongly encouraging Foster to review the court's Pro Se Handbook. Dkt. No. 21.  Foster filed another amended counterclaim on June 24, 2019. Dkt. No. 26.  After S.USA Life filed a motion to dismiss the amended counterclaim (Dkt. No. 27), Foster filed a third counterclaim, dated August 8, 2019.  Foster's August 8, 2019 counterclaim names S.USA Life employee Jack Heller as a defendant, and alleges a negligence claim based upon,

> S.USA Life processing employees repeatedly allowing different individuals, with different accents, and in some cases women, process insurance policies through Foster's licenses.  And in some cases several callers at the same time speaking with S.USA Life who attempted to process Insurance policies under Foster's Licenses.  Wherein S. USA Life processing employees told the Callers that another Foster was currently processing a policy and they would CALL BACK.  Even though Foster started contacting S. USA Life Departments in July 2017 to stop this activity.

Dkt. No. 32, p. 4.

Foster's August 8, 2019 counterclaim is improperly filed pursuant to Rule 15, which provides that "[a] party may amend its pleading once as a matter of course within 21 days after serving it…. In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave."   The court previously granted Foster additional leave to file amended counterclaims twice, both times allowing Foster 21 days to do so. The court did not

5

grant Foster leave to continue filing additional counterclaims after the 21-day period that began on June 3, 2019, and I find that justice does not require granting such additional leave in this case. Foster has filed three counterclaims, numerous briefs and other documents in support of his claims, and a motion to dismiss the complaint. See Dkt. Nos. 5, 11, 15, 16, 19, 22, 23, 24, 26, 31, 32. Foster's pleadings recite substantially identical facts and arguments relating to the underlying Contract and alleged theft of his insurance license. Accordingly, the August 8, 2019 counterclaim is not necessary to allow Foster to test his claim on the merits, and I **RECOMMEND** that it be stricken from the docket as filed without leave of court.

### b. Motion to Dismiss Foster's Counterclaims

Foster's amended counterclaim filed on June 24, 2019, re-asserts the claims included in his prior counterclaim of fraud, fraudulent concealment and aiding and abetting fraud. Foster includes new allegations that S.USA Life violated the United States Tax Code by fraudulently filing information returns and the Virginia Insurance Code by failing to report the fraudulent activities of the identity thieves. Foster's claims, construed liberally, fail to state claims for relief that are plausible on their face. Foster's amended counterclaim attempts to state a legal claim against S.USA Life for its failure to stop identity thieves from using his insurance license, and its failure to inform its clients and the Department of Insurance of the theft. These assertions do not state legal claims under the provisions of law cited by Foster.

#### 1. Fraud

To state a claim of fraud, Foster must allege that S.USA Life (1) made a false statement about a material fact; (2) knew or should have known [the statement] was false; (3) made the statement with intent to induce reliance on it; and (4) because of his justifiable reliance on the statement, Foster was injured. Asokan v. Am. Gen. Life Ins. Co., 302 F. Supp. 3d 1303, 1315

6

(M.D. Fla. 2017).[2] Pursuant to Federal Rule of Civil Procedure 9(b), a complaint must "state with particularity the circumstances constituting fraud or mistake." See Fed R. Civ. P. 9(b).

To the extent that Foster's Amended Complaint asserts negligent misrepresentation, he must prove: "(1) a misrepresentation of material fact that the defendant believed to be true but which was in fact false; (2) that defendant should have known the representation was false; (3) the defendant intended to induce the plaintiff to rely on the misrepresentation; and (4) the plaintiff acted in justifiable reliance upon the misrepresentation, resulting in injury." Arlington Pebble Creek, LLC v. Campus Edge Condo. Ass'n, Inc., 232 So. 3d 502, 505–06 (Fla. 1st DCA 2017).

Foster's amended counterclaim, construed liberally, fails to plead a claim of fraud and/or negligent misrepresentation against S.USA Life, for the same reasons as his initial counterclaim. Foster's allegations center around fraud committed by third parties whom he cannot identify, and S.USA Life's knowledge of and failure to report this fraudulent activity. In response to this court's order dismissing his initial counterclaim, Foster asserts that S.USA Life committed fraud, fraudulent concealment and aiding and abetting fraud on its clients who received insurance policies using Foster's licenses. Dkt. No. 30, p. 2. Foster acknowledges that he cannot present a claim for relief on behalf of S.USA Life's clients, but that S.USA Life's "illegal action" caused Foster to experience loss. Id. These allegations are insufficient to state a claim of fraud and/or negligent misrepresentation against S.USA Life.

---

[2] For the reasons set forth in the April 29, 2019 Report and Recommendation, the court will analyze Foster's counterclaim under Florida law. See Dkt. No. 17, p. 5–6. However, I note that Florida law and Virginia law are almost identical on the issues discussed herein.

### 2. Fraudulent Concealment

A fraudulent concealment claim under Florida law requires Foster to plead that (1) the defendant concealed or failed to disclose a material fact; (2) the defendant knew or should have known the fact should be disclosed; (3) the defendant knew its concealment or failure to disclose would induce the plaintiff to act; (4) the defendant had a duty to disclose the fact; and (5) the plaintiff detrimentally relied on the misinformation. Asokan v. Am. Gen. Life Ins. Co., 302 F. Supp. 3d 1303, 1315 (M.D. Fla. 2017). This court previously found that Foster failed to plead the third, fourth and fifth elements of fraudulent concealment. See Dkt. No. 17, pp. 8–10. The additional allegations in Foster's amended counterclaim do not cure these deficiencies.

Foster's amended counterclaim alleges that S.USA Life had a "duty to disclose" the fraud of third parties under Virginia Code §§ 38.2-1812 and 38.2-1822. Section 38.2-1812 relates to the payment and sharing of insurance commissions and provides that insurers shall not directly or indirectly pay commissions to unlicensed agents. Section 38.2-1822 generally proscribes solicitation or procurement of insurance business without a license and proscribes sharing commissions with an unlicensed person. See Cosby v. Commonwealth ex rel. State Corp. Com'n, 450 S.E.2d 121, 123 (Va. 1994). These provisions do not impose a legal duty on S.USA Life to disclose the fraudulent actions of third parties of which it has knowledge.

Foster specifically relies upon § 38.2-1822(E) which requires that anyone conducting insurance business under an assumed or fictitious name provide certain notifications to the Bureau of Insurance. Foster asserts that this provision establishes S.USA Life's duty to report the theft of his insurance license by third parties. Foster misinterprets the meaning of "fictitious name" as it is used in the statute. The term "fictitious name" is defined by the Virginia State Corporation Commission as,

8

> [A] name that a person (individual or business entity) uses instead of the person's
> true name, usually in the course of transacting or offering to transact business. It
> is sometimes referred to as an 'assumed name' or 'trade name,' and it is often
> identified after a person's true name with the abbreviation 't/a' ('trading as'),
> 'dba' ('doing business as'), or 'aka' ('also known as').

See https://www.scc.virginia.gov/clk/befaq/fict.aspx#a1. The insurance notification provisions cited by Foster dealing with "fictious names" relate to individuals or business entities legally conducting bsuiness under an assumed or trade name, not to persons selling insurance policies through a stolen insurance license.

Further, to the extent Foster alleges that S.USA Life's actions violated these code sections, the sole remedy for such violations lies within the State Corporation Commission. Estate of Spinner v. Anthem Health Plans of VA, 589 F. Supp. 2d 738, 750 (W.D. Va. 2008). Title 38.2 of the Virginia Code does not provide a private cause of action to Foster if S.USA Life improperly engaged in business with unlicensed agents. Am. Chiropractic v. Trigon Healthcare, 367 F.3d 212, 230 (4th Cir. 2004) (there is no private right of action for a violation the Virginia insurance code because the Virginia legislature did "not evince a legislative intent to create private rights of action under the insurance code."); Cox v. MAG Mut. Ins. Co., No. 3:14-cv-377, 2015 WL 1640513, at *5 (E.D. Va. Apr. 9, 2015).

The additional facts provided in Foster's amended counterclaim also fail to establish that S.USA Life knew its failure to disclose the fraud of third parties would induce Foster to act and that Foster detrimentally relied on S.USA Life's misinformation.  As noted previously, Foster reported the fraudulent activity to S.USA Life; thus, he and S.USA Life were on equal ground as to knowledge of the activities and ability to proceed accordingly.

Foster alleges that, despite his own knowledge of the fraudulent activities, he was entitled to rely upon S.USA Life to report the fraud to its customers and to state authorities, and when

9

S.USA Life failed to report the fraud, he incurred damages. Foster alleges that he relied upon the statements of S.USA Life employee Jack Heller that he would "get to the bottom of this," "he would end this and clear everything," and personally investigate the situation. Dkt. No. 26, pp. 7–8. Foster alleges that he had an overwhelming belief from Mr. Heller's statements that he would end the illegal actions and take appropriate measures as required by statutes and laws. Foster asserts that he had the right to believe that S.USA Life would file proper reports with the IRS and Department of Insurance in each state. Id. Foster's belief that S.USA Life would report the fraudulent activities of others are insufficient to state a claim for fraudulent concealment.

As noted above, Foster has not set forth a legal duty by S.USA Life to report the fraudulent actions of third parties. Further, "[i]n all cases of fraud the plaintiff must prove that it acted to its detriment in actual and justifiable reliance on the defendant's misrepresentation (or on the assumption that the concealed fact does not exist)." Bank of Montreal v. Signet Bank, 193 F.3d 818, 827 (4th Cir. 1999).

Foster's counterclaim fails to sufficiently set forth S.USA Life's duty to report the wrongful conduct of others, that S.USA Life concealed a material fact knowing that its concealment would induce Foster to act, and that Foster detrimentally relied upon S.USA Life's misinformation. Accordingly, Foster's amended counterclaim fails to state a claim against S.USA Life for fraudulent concealment.

### 3. Aiding and Abetting Fraud

Foster's amended counterclaim likewise fails to state a cause of action for aiding and abetting fraud, for the reasons set forth in this court's prior opinion. See Dkt. No. 17, pp. 10–13. To the extent a claim of aiding and abetting fraud exists in Florida, is has three elements: (1) the existence of an underlying fraud; (2) the defendant has knowledge of the fraud; and (3) the

10

defendant provided substantial assistance to advance the commission of the fraud. Chang v. JPMorgan Chase Bank, N.A., 845 F.3d 1087 (11th Cir. 2017). As noted previously, the substantial assistance alleged by Foster — S.USA Life's inaction by failing to report the third parties' fraud — constitutes substantial assistance only if the defendant owes a fiduciary duty directly to the plaintiff. Chang, 845 F.3d at 1098. The court previously found that the relationship between Foster and S.USA Life is purely contractual and does not create a fiduciary duty under Virginia or Florida law. See Dkt. No. 17, pp. 11–13; Detwiler v. Bank of Central Fla., 736 So. 2d 757, 759 (Fla. App. 5 Dist. 1999); Dunn Const. Co. v. Cloney, 278 Va. 260, 267–68 (Va. 2009). Foster's amended counterclaim objects to this finding and states, "[t]he relationship [between S.USA Life and Foster] would also have to be within the bounds of the law. An [a]llegation exists that S.USA Life owed [F]oster an obligation independent of the contract. It owed Foster operating within the confines of the law." Dkt. No. 26, p. 8. Foster cites to the Virginia insurance provisions discussed above, §§ 38.2-1812 and 1822(E), and provisions of the U.S. Tax Code, 26 U.S.C. §§ 7434 and 6722. Section 6722 sets forth penalties for the failure to furnish correct payee statements.[3] Section 7434 provides civil damages for the fraudulent filing of information returns. Neither the Virginia code sections nor the tax code provisions cited by Foster create a fiduciary relationship between Foster and S.USA Life such that S.USA Life owed Foster an obligation independent of their contractual relationship.

### 4. Filing False Information Returns

Foster's amended counterclaim can be construed to assert a claim against S.USA Life under § 7434 of the Internal Revenue Code for filing fraudulent information returns. Foster

---

[3] Foster's amended counterclaim can also be construed to allege a claim against S.USA Life for violation of § 6722, relating to the "Failure to furnish correct payee statements." 26 U.S.C. § 6722. However, "[n]o private right of action exists under Section 6722." Rumfelt v. Jazzie Pools, Inc., No. 1:11cv217, 2011 WL 2144553, at *3 (E.D. Va. May 31, 2011) (quoting Katzman v. Essex Waterfront Owners LLC, No. 09 Civ. 7541, 2010 WL 3958819, at *3 (S.D.N.Y Sept. 29, 2010)).

11

states, "[t]he Individuals involved in the identity theft ….had told me the [$]16,301.00 that was paid to me was after taxes.  I did not create an on-line IRS account till [sic] Aug 2018 and the IRS did not inform me till [sic] Feb 4, 2019 that taxes were owed.  It is not reasonable to assume [I] would know about the false reports by S. USA Life to the IRS Before Aug of 2018." Dkt. No. 26, p. 5. Foster's claim, construed broadly, asserts that S.USA Life misrepresented Foster's income to the Internal Revenue Service by filing incorrect information returns.

Section 7434 of the Internal Revenue Code provides a cause of action against a person who willfully files a fraudulent information return with respect to payments purported to be made to any other person.  To establish a claim of tax fraud under § 7434, a plaintiff must prove (1) the employer issued an information return; (2) the information return was fraudulent; and (3) the employer willfully issued a fraudulent information return.  Soliman v. SOBE Miami, LLC, 312 F. Supp. 3d 1344, 1357 (S.D. Fl. 2018) (citing cases). Courts have determined that a W–2 constitutes an "information return" for purposes of Section 7434. Id. at 1357, n. 9.

"[W]illfulness requires more than knowledge. To prove willfulness [sic], the plaintiff must show that the defendants, aware of the duty purportedly imposed by Section 7434, specifically intended to flout the statute." Tran v. Tran, 239 F. Supp. 3d 1296, 1298 (M.D. Fla. 2017) (citing Cheek v. United States, 498 U.S. 192, 201–02 (1991)).

This claim is subject to the heightened pleading standards set forth in Rule 9(b). See Guzman v. Mahjoub, No. 8:17cv01591, 2019 WL 2233351, at * 1, n. 3 (D. Md. May 23, 2019). "[Plaintiff's] conclusory allegation that his W-2 forms 'contained willfully false' underreporting of his wages is insufficient." Id.  Rule 9(b) requires a party to plead fraud with specificity. As the Fourth Circuit has elaborated, "the 'circumstances' required to be pled with particularity under Rule 9(b) are 'the time, place, and contents of the false representations, as well as the identity of

12

the person making the misrepresentation and what he obtained thereby.'" Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 784 (4th Cir. 1999) (citing 5 Charles Alan Wright and Arthur R. Miller, Fed. Practice and Procedure: Civil § 290, at 590 (2d ed. 1990)).

Foster's allegations that S.USA filed incorrect information returns with the IRS fall far short of the Rule 9(b) pleading standard. Foster does not state specifically what forms S.USA Life filed with the IRS, the amount of income set forth on the information forms, or when the forms were filed with the IRS. Foster further fails to set forth any allegations to establish that false reporting by S.USA Life to the IRS was willful.

Accepting as true all of Foster's well-pleaded allegations in the amended counterclaim and viewing them in the light most favorable to Foster, he fails to disclose any specific acts or omissions that give rise to liability for fraud, fraudulent concealment or aiding and abetting fraud under Florida law. This is the third counterclaim Foster has filed in this case, and all of his filings state substantially the same facts and claims with regard to S.USA Life. This court previously allowed Foster leave to amend to correct the insufficiencies in his counterclaim. Any such additional leave would be futile. Accordingly, I **RECOMMEND** that the Court dismiss Foster's amended counterclaims with prejudice.

### c. Foster's Motion to Dismiss S. USA Life's Complaint

#### 1. Timeliness

As a threshold matter, S.USA Life asserts that Foster's motion should be denied as untimely because it was filed over seven months after he filed his Answer to the Complaint. Dkt. Nos. 5, 31. Rule 12(b) motions must be filed prior to a responsive pleading if one is allowed. See Fed. R. Civ. P. 12(b) ("A motion pleading any of these defenses must be made before pleading if a responsive pleading is allowed."). S.USA Life argues that because Foster filed his Answer

13

seven months before its Rule 12(b) motion, the motion must be denied. Dkt. No. 34, p. 1. However, the court may construe an untimely Rule 12(b)(6) motion as a motion for judgment on the pleadings under Rule 12(c), and doing so does not change the legal standard. See Burbach Broad. Co. of Del. v. Elkins Radio Corp., 278 F.3d 401, 405–06 (4th Cir. 2002) ("Because ... the pleadings were closed at the time of the motion [,] ... we construe the motion as one for judgment on the pleadings. However, the distinction is one without a difference, as we ... [apply] the same standard for Rule 12(c) motions as for motions made pursuant to Rule 12(b)(6).") (citing Edwards v. Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999) ). Both require the court to assume the well-pleaded facts are true and to draw all reasonable inferences in plaintiff's favor.

Therefore, because Foster's 12(b)(6) motion may be construed as a motion for judgment on the pleadings, which is not waived, under the same legal standard, the court will construe Foster's Rule 12(b)(6) motion as a motion for judgment on the pleadings and allow it to proceed. See Edwards, 760 F.Supp.2d at 614.; Hardy v. Lewis Gale Med. Ctr., LLC, 377 F. Supp. 3d 596, 605–06 (W.D. Va. 2019)

### 2. Motion for Judgement on the Pleadings

Foster's motion to dismiss the complaint re-states the assertions set forth in his counterclaims and other briefing.[4] Foster argues that the complaint fails to state a claim upon which relief can be granted because, "The Courts cannot legally grant relief based on illegal actions by the plaintiff." Dkt. No. 31. Foster's arguments overall amount to disagreement with the facts asserted by S.USA Life and assertions that S.USA Life is not entitled to the relief it

---

[4] Foster contests that he did not receive proper notice and service of the complaint (Dkt. No. 31, p. 7), stating "[t]he manner of serving the defendant with the summons and complaint was insufficient because….S.USA Life had already been informed that their co-conspirators had repeatedly used addresses NOT associated with Foster….No Notices were sent to Foster." Dkt. No. 31, p. 7–8. The docket reflects that Foster was personally served with the summons and complaint in this action on December 8, 2018. Dkt. No. 4.

seeks. These allegations do not warrant dismissal of the complaint but are more properly asserted as defenses to the complaint as this action moves forward.

A plaintiff is not required to prove its claim at the pleading stage of litigation. Instead, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

Here, S.USA Life's Complaint asserts claims for breach of contract and unjust enrichment. The elements of a breach of contract action in Virginia[5] are (1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach of obligation. Cunningham Bros. Used Auto Parts, Inc. v. Zurich Am. Ins. Co., No. 6:17-cv-51, 2017 WL 4707464, at *2 (W.D. Va. Oct. 19, 2017). S.USA Life alleges that it entered into a General Agent Contract with Foster which required Foster to repay certain commission chargebacks within 30 days of receiving notice demanding repayment; that Foster was given notice demanding repayment of commission chargebacks; that Foster failed to repay the commission chargebacks as required within 30 days of receiving the notice and thus breached the contract; and that as a result, Foster owes S.USA Life $117,320.71 in commission chargebacks. Dkt. No. 1, pp. 1–5. S.USA Life attached to the Complaint the Contract and two notices of commission chargebacks owed. Dkt. Nos. 1-1, 1-2, 1-3.

---

[5] A federal court sitting in diversity will apply the choice-of-law rules of the forum state. See Erie R.R. v. Tompkins, 304 U.S. 64, 78 (1938); Kalxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487, 496 (1941). The Contract here contains a choice of law provision that the contract "will be governed and construed in accordance with the laws of the Commonwealth of Virginia, without giving effect to its conflict of laws principles and rules." Dkt. No. 1-1, p. 4. Virginia law looks favorably upon choice of law clauses in a contract, giving them full effect except in unusual circumstances. Hitachi Credit America Corp. v. Signet Bank, 166 F.3d 614, 624 (4th Cir. 1999). Accordingly, S.USA Life's breach of contract claim is governed by Virginia law.

Alternatively, S.USA Life alleges a claim of unjust enrichment.[6] Unjust enrichment is an equitable claim arising from the simple principle that "one person may not enrich himself unjustly at the expense of another." Rinehart v. Pirkey, 126 Va. 346, 351, 101 S.E. 353, 354 (1919). In the absence of an express or enforceable contract, the law nevertheless will imply a promise to pay if the circumstances establish unjust enrichment. Ellis & Myers Lumber Co. v. Hubbard, 123 Va. 481, 96 S.E. 754, 760 (1918). To recover on an unjust enrichment theory, the claimant must show: (1) he conferred a benefit on the other party; (2) the other party had knowledge that the claimant was conferring the benefit; and (3) the other party accepted the benefit under circumstances that render it inequitable for him to retain the benefit without paying for the value he received. Odyssey Imaging, LLC v. Cardiology Assoc. of Johnston, LLC, 752 F.Supp.2d 721, 724–25 (W.D. Va. 2010). Here, S.USA Life alleges that it conferred a benefit on Foster by paying commissions on insurance policies that were later rescinded, processed as "not taken," or terminated within the first year; that Foster knew of the benefit and should have reasonably expected to pay S.USA Life for it; and that Foster accepted the benefit of without paying for its value and was thus, unjustly enriched. Dkt. No. 1, p. 5.

S.USA Life submitted sufficient factual allegations that if accepted as true, as the court must, state plausible claims. See PNC Mortg. v. Powe, No. 4:10-1581-TLW-SVH, 2011 WL 7069551, at *2 (D.S.C. Nov. 28, 2011). From a review of the allegations of the Complaint, I conclude that proper claims for relief have been stated and S.USA Life has adequately alleged claims for breach of contract and unjust enrichment. Accordingly, I **RECOMMEND** denying Foster's Motion to Dismiss the Complaint.

---

[6] S.USA Life acknowledges that it cannot recover on both its breach of contract and unjust enrichment claims, but properly pleads them as alternative theories of recovery. See Dkt. No. 34, p. 9, n. 2.

16

## V.     RECOMMENDED DISPOSITION

For the foregoing reasons, I **RECOMMEND** striking Foster's August 8, 2019 counterclaim (Dkt. No. 32) from the docket as filed without leave of court; **GRANTING** S.USA Life's Motion to Dismiss Foster's Counterclaim (Dkt. No. 27) and dismissing Foster's amended counterclaim with prejudice; and **DENYING** Foster's Motion to Dismiss S. USA Life's Complaint (Dkt. No. 31).

The clerk is directed to transmit the record in this case to the Honorable Michael F. Urbanski, United States District Judge, and to provide copies of this Report and Recommendation to counsel of record and *pro se* parties. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation which must be filed within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by me that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings, as well as to the conclusion reached by me, may be construed by any reviewing court as a waiver of such objections, including a waiver of the right to appeal.

                                              Entered: October 15, 2019

                                              *Robert S. Ballou*
                                              Robert S. Ballou
                                              United States Magistrate Judge